SEYFARTH SHAW LLP
Theodore E. Roethke (SBN 257869)
troethke@seyfarth.com
1075 Peachtree Street, N.E., Suite 2500
Atlanta, Georgia 30309-3958
Telephone: (404) 885-1500
Facsimile: (404) 892-7056

*Counsel for Defendant*
*Equifax Information Services LLC*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXIS DANIELLE CARO,<br><br>    Plaintiff,<br><br>    v.<br><br>EQUIFAX INFORMATION SERVICES, LLC,<br><br>    Defendant. | Case No. 2:26-cv-01281-TLN-CSK<br><br>**DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO PLAINTIFF'S COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES** |

Defendant EQUIFAX INFORMATION SERVICES LLC ("Equifax") by and through its attorneys hereby submits its Answer to Plaintiff's Complaint and Affirmative and Other Defenses, as follows:

**PRELIMINARY STATEMENT**

In answering the Complaint, Equifax states that it is responding to allegations on behalf of itself only, even where the allegations pertain to alleged conduct by all Defendants. Equifax denies any and all allegations in the headings and/or unnumbered paragraphs in the Complaint.

**ANSWER**

In response to the specific allegations in the enumerated paragraphs in the Complaint, Equifax responds as follows:

325634171v.1

## PRELIMINARY STATEMENT

**COMPLAINT ¶1:**

This is an action for actual damages, costs, and attorneys' fees brought pursuant to 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681i(a) of the Fair Credit Reporting Act ("FCRA").

**ANSWER:**

Equifax admits that Plaintiff purports to bring an action pursuant to the Fair Credit Reporting Act ("FCRA"), but Equifax denies that it violated the law and further denies that Plaintiff is entitled to any relief whatsoever from Equifax. Equifax denies the remaining allegations in this paragraph as they pertain to Equifax.

**COMPLAINT ¶2:**

Equifax, Experian, and Trans Union are the USA's major consumer reporting agencies (hereinafter, these 3 are collectively referred to as the "CRAs").

**ANSWER:**

Equifax admits that some of its business activities meet the definition of "consumer reporting agency" set forth in the FCRA, and admits that allegation as to those activities only. Equifax also admits that Experian and Trans Union are consumer reporting agencies. Equifax is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

**COMPLAINT ¶3:**

The Fair Credit Reporting Act provides federally codified protection of Plaintiff's civil rights with regard to Plaintiff's privacy, Plaintiff's reputation, and Plaintiff's due process rights against defamation. The Fair Credit Reporting Act is part of a larger category of consumer protection statutes designed to arm consumers against discrimination, intrusions upon privacy, and other types of unfair and inequitable treatment. Similar statutes falling under this same umbrella of protection include, for example, the Equal Credit Opportunity Act, the Fair Housing Act, and the Fair Debt Collection Practices Act.

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO PLAINTIFF'S COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

325634171v.1

**ANSWER:**

Equifax states that the statutory provisions referenced by this paragraph speak for themselves, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misuses, misquotes, or takes out of context the contents of the statutory provisions referenced by this paragraph.

**COMPLAINT ¶4:**

Claims under these federal protections are brought "in connection with any action involving a claim of `unlawful discrimination,' as described in 26 U.S.C § 62(a)(20). For the purposes of 26 U.S.C § 62(a)(20), the term "unlawful discrimination" is broadly defined in 26 U.S.C § 62(e) to mean "an act that is unlawful under . . .[a]ny provision of Federal, State, or local law, or common law claims permitted under Federal, State, or local law . . . providing for the enforcement of civil rights."

**ANSWER:**

Equifax states that the statutory provisions referenced by this paragraph speak for themselves, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misuses, misquotes, or takes out of context the contents of the statutory provisions referenced by this paragraph.

**COMPLAINT ¶5:**

Not only do inaccurate consumer reports lead to discrimination against consumers, but they also make it more difficult for banks and other finance companies to efficiently extend offers of credit to qualified individuals. The most obvious example occurs when a consumer applies for credit, is subsequently denied due to inaccurate information on their report, and the lender loses what would have been a potential customer. The inaccuracies not only harm the consumer, but they also deny the potential lender an opportunity to assess that consumer's creditworthiness accurately.

**ANSWER:**

Equifax is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

**COMPLAINT ¶6:**

In addition to relying on consumer reports to evaluate direct credit applications, many companies use CRAs to "prescreen" consumers' eligibility for particular offers.

3

325634171v.1

In prescreening, a creditor or insurer establishes a set of specific credit criteria (such as a minimum credit score) and requests from a CRA the names, addresses, and certain other information on consumers in the CRA's database who meet the specified criteria. Alternatively, the creditor or insurer may provide a list of potential customers to the CRA and request that the CRA identify which consumers on that list meet the established credit criteria.

BD. OF GOVERNORS OF THE FED. RESERVE SYS., *Report to the Congress on Further Restrictions on Unsolicited Written Offers of Credit and Insurance*, 7 (2004), Available at https://www.federalreserve.gov/boarddocs/rptcongress/UnsolicitedCreditOffers20 4.pdf.

**ANSWER:**

Equifax states that the agency publication referenced by this paragraph speaks for itself, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misuses, misquotes, or takes out of context the contents of the agency publication referenced by this paragraph.

**COMPLAINT ¶7:**

If there is inaccurate information on a consumer's report, the CRA and lender may wrongfully exclude that consumer from certain "prescreened" offers. In this situation, the inaccuracies both preclude the individual consumer from receiving the credit offers and impede the lender's ability to use prescreening as a tool for "market efficiencies and better control of risks." *See, e.g., id.* at 10.

**ANSWER:**

Equifax states that the agency publication referenced by this paragraph speaks for itself, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misuses, misquotes, or takes out of context the contents of the agency publication referenced by this paragraph.

**COMPLAINT ¶8:**

The FCRA demands that CRAs utilize reasonable procedures to assure the maximum possible accuracy of the information they report. 15 U.S.C. § 1681e(b). When a consumer disputes an item of information, the agency must investigate the dispute and, if the information cannot be verified, delete it. 15 U.S.C. § 1681i.

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO PLAINTIFF'S COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

325634171v.1

**ANSWER:**

Equifax states that the statutory provisions referenced by this paragraph speak for themselves, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misuses, misquotes, or takes out of context the contents of the statutory provisions referenced by this paragrap

**COMPLAINT ¶9:**

The FCRA's accuracy provisions demand that CRAs take actual steps to ensure the maximum possible accuracy of the information they report.

**ANSWER:**

Equifax states that the statutory provisions referenced by this paragraph speak for themselves, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misuses, misquotes, or takes out of context the contents of the statutory provisions referenced by this paragraph.

**COMPLAINT ¶10:**

Despite these Congressional demands, and the risks associated with inaccurate information, a recurring and known issue within the credit reporting industry is the creation of "mixed files."

**ANSWER:**

Equifax admits that it is aware of the concept of a "mixed file."

**COMPLAINT ¶11:**

A "mixed file" occurs when personal and credit information belonging to Consumer B appears in one or more of Consumer A's credit files.

**ANSWER:**

Equifax admits that the allegations in this paragraph constitute one version of the concept of "mixed file."

**COMPLAINT ¶12:**

"Mixed files" create a false description and representation of a consumer's credit history.

**ANSWER:**

Equifax is without knowledge or information sufficient to form a belief as to the generalized and non-specific allegations in this paragraph.

5

325634171v.1

**COMPLAINT ¶13:**

The Federal Trade Commission defined a mixed credit file as a file that "refers to a Consumer Report in which some or all of the information pertains to Persons other than the Person who is subject to that Consumer Report." *F.T.C. v. TRW, Inc.*, 784 F. Supp. 361, 362 (N.D. Tex. 1991).

**ANSWER:**

Equifax states that the judicial opinion referenced by this paragraph speaks for itself, and to the extent that Plaintiff misstates, misquotes, misuses, mischaracterizes, or takes out of context the contents thereof those allegations are denied.

**COMPLAINT ¶14:**

Equifax is mixing Plaintiff's credit file with another consumer's and it has refused to correct its errors.

**ANSWER:**

Equifax denies the allegations in this paragraph.

**COMPLAINT ¶15:**

Plaintiff brings claims under Section 1681e(b) against Equifax because it mixed Plaintiff's credit information with that of another consumer and then reported that inaccurate and derogatory information to third parties. When Plaintiff disputed the inaccuracies, Equifax did not reasonably investigate, also violating Section 1681i.

**ANSWER:**

Equifax admits that Plaintiff purports to bring an action pursuant to the Fair Credit Reporting Act ("FCRA"), but Equifax denies that it violated the law and further denies that Plaintiff is entitled to any relief whatsoever from Equifax. Equifax denies the remaining allegations in this paragraph as they pertain to Equifax.

**COMPLAINT ¶16:**

The Consumer Financial Protection Bureau has noted, "experience indicates that [CRAs] lack incentives and under-invest in accuracy" Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017). This is particularly true as to how Equifax has

325634171v.1

complied with its now 50-year-old obligation to conduct a meaningful accuracy investigation. Equifax has been repeatedly sued by consumers, sanctioned by regulators, and reprimanded by both District and Appellate courts to do more than an automated parroting of what their customer-creditors instruct. Had Equifax followed that advice and heeded those warnings, Plaintiff would not have been harmed.

**ANSWER:**

Equifax states that the agency publication, litigation history, agency actions, and case law referenced by this paragraph speak for themselves, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misuses, misquotes, or takes out of context the contents of the agency publication, litigation history, agency actions, and case law referenced by this paragraph. Equifax denies any remaining allegations in this paragraph.

<b>JURISDICTION AND VENUE</b>

**COMPLAINT ¶17:**

Jurisdiction for this Court is conferred by 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

**ANSWER:**

Equifax admits that, to the extent Plaintiff has properly alleged her claims, this Court may exercise its subject matter jurisdiction.

**COMPLAINT ¶18:**

Venue is proper for this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial portion of the violations described in this Complaint occurred in this District and Defendant is a resident of this District.

**ANSWER:**

Equifax does not contest venue.

<b>PARTIES</b>

**COMPLAINT ¶19:**

Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c) and a resident of Solano County, California.

**ANSWER:**

Upon information and belief, Equifax admits the allegations in this paragraph.

325634171v.1

**COMPLAINT ¶20:**

Equifax is a foreign corporation headquartered in Atlanta, Georgia. Equifax does business in California through its registered agent: 1505 Corporation The Prentice-Hall Corporation System, Inc., Josh Swindell 2710 Gateway Oaks Drive Ste. 150N, Sacramento, CA.

**ANSWER:**

Equifax denies that it is a corporation. Equifax admits that it is headquartered in Atlanta, Georgia. Equifax admits that it maintains a registered agent in California. Equifax denies the remaining allegations in this paragraph.

**COMPLAINT ¶21:**

Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f). Equifax is regularly engaged in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

**ANSWER:**

Equifax admits that some of its business activities meet the definition of consumer reporting agency set forth in the FCRA, and admits that allegations as to those activities only. Equifax admits, as a general matter, that it sells consumer reports.

**COMPLAINT ¶22:**

Equifax disburses such consumer reports to third parties under contract for monetary compensation.

**ANSWER:**

Equifax admits, as a general matter, that it sells consumer reports.

**FACTUAL ALLEGATIONS**

***Sections 1681e(b) and 1681i(a) of The Fair Credit Reporting Act***

***Require Substantive Investigations***

**COMPLAINT ¶15:***[sic]*

"Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry. *See* S. Rep. No. 91-517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); *id.* at

325634171v.1

36570 (statement of Rep. Sullivan) . . . In enacting FCRA Congress adopted a variety of measures designed to ensure that agencies report accurate information." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414-15 (4th Cir. 2001). "In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth . . . in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A)." *Burke v. Experian Info. Sols., Inc.*, No. 1: 10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

**ANSWER:**

Equifax states that the statutory provisions, case law, and Congressional reports referenced by this paragraph speak for themselves, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misuses, misquotes, or takes out of context the contents of the statutory provisions, case law, and Congressional reports referenced by this paragraph. Plaintiff's interpretation of the law also contains legal conclusions not subject to admission or denial.

**COMPLAINT ¶16:**

"Section 1681e(b) sets forth the CRAs' overall du[t]y:

(b) Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

*Burke*, 2011 WL 1085874, at *4.

**ANSWER:**

Equifax states that the case law referenced by this paragraph speaks for itself, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misuses, misquotes, or takes out of context the contents of the case law referenced by this paragraph. Plaintiff's interpretation of the law also contains legal conclusions not subject to admission or denial.

**COMPLAINT ¶17:**

"The . . . FCRA . . . was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and

9

325634171v.1

current information in a confidential and responsible manner." *Guimond v. TransUnion Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (citations omitted). "These consumer-oriented objectives support a liberal construction of the FCRA,' and any interpretation of this remedial statute must reflect those objectives." *Cortez v. TransUnion, LLC*, 617 F.3d 688, 706 (3d Cir. 2010) (quoting *Guimond*, 45 F.3d at 1333).

**ANSWER:**

Equifax states that the case law referenced by this paragraph speaks for itself, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misuses, misquotes, or takes out of context the contents of the case law referenced by this paragraph. Plaintiff's interpretation of the law also contains legal conclusions not subject to admission or denial.

**COMPLAINT ¶18:**

Over a decade ago, the Third Circuit apprised TransUnion specifically and Experian and Equifax generally of the high duty of care imposed by Section 1681e(b):

> [T]he distinction between "accuracy" and "maximum _possible accuracy" is not nearly as subtle as may at first appear, it is in fact quite dramatic....

> There are, of course, inherent dangers in including any information in a credit report that a credit reporting agency. cannot confirm is related to a particular consumer. Such information is nearly always "used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for ... credit. 15 U.S.C. § 1681a(d)(1). Allowing a credit agency to include misleading information as cavalierly as TransUnion did here negates the protections Congress was trying to afford consumers and lending institutions involved in credit transactions when it enacted the FCRA....

> Congress surely did not intentionally weave an exception into the fabric of the FCRA that would destroy its remedial scheme by allowing a credit reporting agency to escape responsibility for its carelessness whenever misleading information finds its way into a credit report through the agency of a third party....

> TransUnion remains responsible for the accuracy in its reports under the FCRA and it cannot escape that responsibility as easily as it suggests here. Congress clearly intended to ensure that credit reporting agencies exercise care when deciding to associate information with a given consumer, and the record clearly supports the jury's determination that TransUnion did not exercise sufficient care here.

*Cortez v. Trans Union, LLC*, 617 F.3d 688, 709-10 (3d Cir. 2010).

325634171v.1

**ANSWER:**

Equifax states that the statutory provisions and case law referenced by this paragraph speak for themselves, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misuses, misquotes, or takes out of context the contents of the statutory provisions and case law referenced by this paragraph. Plaintiff's interpretation of the law also contains legal conclusions not subject to admission or denial.

**COMPLAINT ¶19:**

Section 1681i(a) requires much more from a CRA after a consumer has placed it on notice of an inaccuracy through a dispute:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . before the end of the 30-day period[.]

15 U.S.C. § 1681i(a)(1)(A).

**ANSWER:**

Equifax states that the statutory provisions referenced by this paragraph speaks for itself, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misuses, misquotes, or takes out of context the contents of the statutory provision referenced by this paragraph. Plaintiff's interpretation of the law also contains legal conclusions not subject to admission or denial.

**COMPLAINT ¶20:**

Section § 1681i(a) imposes "a duty . . . to make reasonable efforts to investigate and correct inaccurate or incomplete information brought to its attention by the consumer." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991).

**ANSWER:**

Equifax states that the statutory provisions and case law referenced by this paragraph speak for themselves, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misuses, misquotes, or takes out of context the contents of the statutory provisions and case law referenced by this

325634171v.1

paragraph. Plaintiff's interpretation of the law also contains legal conclusions not subject to admission or denial.

**COMPLAINT ¶21:**

That "grave responsibility" imposed by the FCRA reinvestigation requirement "must consist of something more than merely parroting information received from other sources." *Cushman v. Trans Union Corp.,* 115 F.3d 220, 225 (3d Cir. 1997). The Court held that TransUnion's reading of Section 1681i(a) to require only parroting "would require it only to replicate the effort it must undertake in order to comply with § 1681e(b)[,] render[ing] the two sections largely duplicative of each other." *Id.*

**ANSWER:**

Equifax states that the statutory provisions and case law referenced by this paragraph speak for themselves, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misuses, misquotes, or takes out of context the contents of the statutory provisions and case law referenced by this paragraph. Plaintiff's interpretation of the law also contains legal conclusions not subject to admission or denial.

**COMPLAINT ¶22:**

Further, as Equifax is aware, courts have held that even though the term "investigation" is not used in § 1681e(b), it is clear that CRAs have a duty to conduct a reasonable initial investigation pursuant to § 1681e(b) as well as § 1681i(a) and that this is "central" to the CRAs' duties of care under that portion of the Act:

> This conclusion flows from the plain meaning of both [§1681e(b) and §1681i(a)]. For example, Section 1681e(b) requires (1) "reasonable procedures" that (2) "assure" (3) "maximum possible accuracy." To "assure" means "to make sure or certain: put beyond all doubt." *Webster's Third New International Dictionary* 133 (1993). "Maximum" means the "greatest in quantity, or highest degree attainable" and "possible" means something "falling within the bounds of what may be done, occur or be conceived . . . ." *Id.* at 1396, 1771. It is difficult to imagine how "maximum possible accuracy" could be guaranteed without an adequate investigation. Likewise, Section 1681i(a)(1)(A) requires a "reinvestigation ," necessarily implying that an "investigation' was required to have been performed in the first instance.

*Burke*, 2011 WL 1085874, at *4.

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO PLAINTIFF'S COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

325634171v.1

**ANSWER:**

Equifax states that the statutory provisions and case law referenced by this paragraph speak for themselves, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misuses, misquotes, or takes out of context the contents of the statutory provisions and case law referenced by this paragraph. Plaintiff's interpretation of the law also contains legal conclusions not subject to admission or denial.

**COMPLAINT ¶23:**

It has long been the law — since 1970 in fact — that:

[W]hen a CRA learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy and take any necessary steps to avoid future problems. Similarly, it should establish procedures to avoid reporting information from its furnishers that appears implausible or inconsistent.

Federal Tr. Comm'n, 40 Years Of Experience with the Fair Credit Reporting Act (July 2011), at 67.[1]

**ANSWER:**

Equifax states that the agency publication referenced by this paragraph speak for themselves, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misuses, misquotes, or takes out of context the contents of the agency publication referenced by this paragraph. Plaintiff's interpretation of the law also contains legal conclusions not subject to admission or denial.

*Plaintiff Discovers Equifax Reporting Inaccurate and Derogatory Information on her Credit File*

**COMPLAINT ¶24:**

In or around early January 2025, Plaintiff viewed a copy of her credit file from Defendant Equifax.

**ANSWER:**

Equifax is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph

---

[1] *Available at* https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf

325634171v.1

**COMPLAINT ¶25:**

Upon reviewing the contents of the Equifax credit file, Plaintiff was confused by the appearance of several pieces of information that did not belong to Plaintiff at all.

**ANSWER:**

Equifax is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

**COMPLAINT ¶26:**

Specifically, Defendant Equifax was reporting a derogatory American Express ("AMEX") tradeline which did not belong to Plaintiff.

**ANSWER:**

Equifax is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph

**COMPLAINT ¶27:**

Further, Equifax was reporting an employer named "Gustavo," which did not belong to Plaintiff.

**ANSWER:**

Equifax is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph

**COMPLAINT ¶28:**

Equifax was also reporting five inaccurate hard inquiries, which Plaintiff did not authorize, from entities with whom Plaintiff did not have an account relationship: ALLYFINANCE, HANLESS DA, GLOBALLEND, NMAC, CAP ONE AF.

**ANSWER:**

Equifax is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph

**COMPLAINT ¶25:** *[sic]*

Plaintiff did not apply for credit with any of the aforementioned entities and did not have a credit relationship with any of the aforementioned entities. She did not receive offers of credit from any of the

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO
PLAINTIFF'S COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

325634171v.1

aforementioned entities. Equifax did not have a permissible purpose for furnishing information about Plaintiff to the above-referenced entities on the above-referenced dates.

**ANSWER:**

Equifax is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph

**COMPLAINT ¶26:**

By reporting the inaccurate and derogatory AMEX tradeline, the inaccurate hard inquiries, and the inaccurate employment information in the credit file presumably about Plaintiff, despite the fact that the tradeline, hard inquiries and employment information do not belong to Plaintiff, Equifax failed to follow reasonable procedures to assure the maximum possible accuracy of the information contained within Plaintiff's credit files and consumer reports, in violation of 15 U.S.C. § 1681e(b).

**ANSWER:**

Equifax denies the allegations in this paragraph.

**COMPLAINT ¶27:**

Plaintiff's credit reports with non-parties Experian and Trans Union did not reflect these inaccuracies, further demonstrating that it was Defendant Equifax's flawed algorithm and procedures that caused the inaccurate reporting.

**ANSWER:**

Equifax is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

**COMPLAINT ¶28:**

Upon information and belief, all of the above-referenced inquiries were initiated by credit applications submitted by a different consumer.

**ANSWER:**

Equifax is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph

15

325634171v.1

**COMPLAINT ¶29:**

As Plaintiff had not authorized any of the above-referenced entities to request Plaintiff's credit report from Equifax on the above-referenced dates, nor did Plaintiff enter into any business transaction or relationship which otherwise may have provided a basis for those entities securing a copy of Plaintiff's credit report from Equifax, Equifax disclosed information about Plaintiff to the above-referenced entities without a permissible purpose and in violation of 15 U.S.C. § 1681b(a).

**ANSWER:**

Equifax denies the allegations in this paragraph.

### Plaintiff Disputes the Inaccurate and Derogatory Information

**COMPLAINT ¶30:**

Worried that something was very wrong with her credit file, Plaintiff disputed the inaccuracies by submitting a dispute to Equifax on or about January 15, 2025. Plaintiff submitted the dispute through Equifax's online portal. Specifically, Plaintiff disputed the information that did not belong to her and Plaintiff requested that Equifax reinvestigate the disputed information, correct the reporting, and send her a corrected copy of her credit report.

**ANSWER:**

Equifax admits that it received an online dispute from Plaintiff or someone acting on her behalf in January 2025, which speaks for itself. To the extent that Plaintiff misstates, misquotes, misuses, mischaracterizes or takes out of context the contents thereof those allegations are denied.

**COMPLAINT ¶31:**

Plaintiff received confirmation that Equifax received her online dispute on January 15, 2025.

**ANSWER:**

Upon information and belief, Equifax admits the allegations in this paragraph.

**COMPLAINT ¶32:**

Plaintiff did not receive a response to her January 2025 online dispute from Equifax.

**ANSWER:**

Upon information and belief, Equifax denies the allegations in this paragraph.

16

325634171v.1

**COMPLAINT ¶33:**

In our around early July 2025, Plaintiff applied for a pre-approval for-a mortgage in order to purchase her first home.

**ANSWER:**

Equifax is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

**COMPLAINT ¶34:**

Plaintiff anticipated that she would be pre-approved for a mortgage.

**ANSWER:**

Equifax is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

**COMPLAINT ¶35:**

Plaintiff provided all of her personal identifying information and supporting documents and provided consent to the lender to obtain Plaintiff's consumer reports and/or credit scores in order to determine Plaintiff's credit eligibility.

**ANSWER:**

Equifax is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

**COMPLAINT ¶36:**

The lender had contracted with various companies .that specialize in providing credit reports to mortgage lenders.

**ANSWER:**

Equifax is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

**COMPLAINT ¶37:**

On July 7, 2025, Equifax sold consumer reports concerning Plaintiff to Barrett Financial, Creditfax and Credit Information Services.

17

325634171v.1

**ANSWER:**

Equifax admits that a July 7, 2025 inquiry for CISCO/Barrett Financial appears on Plaintiff's Equifax credit file.

**COMPLAINT ¶38:**

Shortly after submitting her application, Plaintiff learned she was denied for a pre-approval for a mortgage.

**ANSWER:**

Equifax is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

**COMPLAINT ¶39:**

Upon information and belief, Plaintiff's pre-approval for mortgage application was denied as a result of Equifax publishing inaccurate information to Barrett Financial, Creditfax and Credit Information Services, including the tradeline, employer information and hard inquiries that did not belong to Plaintiff

**ANSWER:**

Equifax is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

**COMPLAINT ¶40:**

Plaintiff's credit report specifically shows that Credit Information Services had obtained Plaintiff's credit information from Equifax.

**ANSWER:**

Equifax admits that a July 7, 2025 inquiry for CISCO/Barrett Financial appears on Plaintiff's Equifax credit file.

**COMPLAINT ¶41:**

Upon information and belief, Plaintiff's pre-approval for a mortgage was denied because Equifax published information to Credit Information Services, who in turn sold it to the lender, including the inaccurate and derogatory AMEX tradeline, the inaccurate employer information, and the hard inquiries that did not belong to Plaintiff.

18

325634171v.1

**ANSWER:**

Equifax is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

**COMPLAINT ¶42:**

Plaintiff decided to obtain help to correct the growing financial issue that was caused by the Defendant.

**ANSWER:**

Equifax is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

**COMPLAINT ¶43:**

On November 4, 2025, Plaintiff sent a properly addressed dispute letter via certified mail with sufficient postage to Equifax, disputing the inaccuracies on her Equifax credit report. Specifically, Plaintiff disputed the information that did not belong to her and requested that Equifax reinvestigate the disputed information and correct the inaccurate reporting on her credit report.

**ANSWER:**

Equifax admits that it received a dispute from Plaintiff or someone acting on Plaintiff's behalf dated November 4, 2025, which speaks for itself. To the extent that Plaintiff misstates, misquotes, misuses, mischaracterizes or takes out of context the contents thereof those allegations are denied.

**COMPLAINT ¶44:**

Equifax received Plaintiff's dispute letter on November 7, 2025, via USPS certified mail; tracking number: 9407-1118-9876-5471-0939-45.

**ANSWER:**

Equifax admits that it received a dispute from Plaintiff or someone acting on Plaintiff's behalf dated November 4, 2025, which speaks for itself. To the extent that Plaintiff misstates, misquotes, misuses, mischaracterizes or takes out of context the contents thereof those allegations are denied.

**COMPLAINT ¶45:**

Plaintiff did not receive a response to her November 2025 dispute from Defendant Equifax.

325634171v.1

**ANSWER:**

Upon information and belief, Equifax denies the allegations in this paragraph.

**COMPLAINT ¶46:**

On January 6, 2026, Plaintiff accessed her credit reports, and to Plaintiff's dismay, found that Equifax was still reporting the aforementioned inaccurate tradeline, employer information and hard inquiries on her credit file.

**ANSWER:**

Equifax is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

***Equifax Did Not and Does Not Conduct Any Investigation of Most Consumer Disputes***

**COMPLAINT ¶47:**

Unknown to Plaintiff until this lawsuit, it has long been the practice of Equifax to refuse to perform that statutorily mandated FCRA investigation and instead delegate all action in response to consumer disputes to a third-party outsource vendor located overseas. Equifax uses a vendor which was previously known as Intelenet Global Services and is now known as Teleperformance.

**ANSWER:**

Equifax admits that some, but not all, of its reinvestigations may involve agents employed by an Equifax vendor located outside of the United States. Equifax denies the remaining allegations in this paragraph. Equifax admits that one of its vendors is Teleperformance.

**COMPLAINT ¶48:**

Here is how the written mail dispute process actually works for Equifax: a third-party document processing company in Atlanta maintains several Post Office boxes for receiving consumer mail to Equifax such as disputes, requests for a credit file disclosure, or other communication. That mailbox company receives consumer disputes and scans them into a batch with other disputes.

**ANSWER:**

Equifax admits that consumers may submit disputes to a post office box. Equifax also admits that some mail disputes may be initially sorted and processed by a vendor.

325634171v.1

**COMPLAINT ¶49:**

Teleperformance uses low-wage employees to work quickly to process consumer dispute letters received. The employees skim the letters and select one of d handful of codes from a dropdown menu to best describe the consumer's detailed dispute information in 2 digits. For example, the most common relevant code is: "01 Not his/her."

**ANSWER:**

Equifax admits that dispute codes may be used to characterize the nature of a consumer dispute. Upon information and belief, Equifax denies the remaining allegations in this paragraph. By way of further response, Equifax states that Plaintiff's characterization of the dispute processing process is, e.g., incomplete, skewed, and oversimplified.

**COMPLAINT ¶50:**

Teleperformance agents are not allowed to do any of the following things: contact the consumer; use the telephone or e-mail to investigate; research; contact the furnisher directly; or take longer than 5 minutes per dispute.

**ANSWER:**

Equifax admits that dispute codes may be used to characterize the nature of a consumer dispute. Upon information and belief, Equifax denies the remaining allegations in this paragraph. By way of further response, Equifax states that Plaintiff's characterization of the dispute processing process is, e.g., incomplete, skewed, and oversimplified.

**COMPLAINT ¶51:**

The dispute processing agents are not hired to perform actual FORA investigations. Instead, the agent's sole responsibility is to read consumer dispute letters, select one of a handful of common dispute codes from a drop-down menu, and then click that code.

**ANSWER:**

Equifax admits that dispute codes may be used to characterize the nature of a consumer dispute. Upon information and belief, Equifax denies the remaining allegations in this paragraph. By way of further

325634171v.1

response, Equifax states that Plaintiff's characterization of the dispute processing process is, e.g., incomplete, skewed, and oversimplified.

**COMPLAINT ¶52:**

In fact, Equifax strongly encourages consumers to make disputes through its online websites. When consumers do so, the consumer has to click one of just a few available dispute reasons (such as "The balance and/or past due amount are/is incorrect"). The online dispute then is outputted into Equifax's system without ever touching human hands or being read by human eyes at Equifax. The dispute is sent to Equifax's creditor customers (such as AMEX) for their sole review and consideration.

**ANSWER:**

Equifax admits that it provides consumers the convenience of submitting their dispute online. Equifax also admits that consumers may select out of several options for the categorization of their dispute. Equifax denies the remaining allegations in this paragraph.

**COMPLAINT ¶53:**

Equifax has taken the position in other litigation that it has no control over Teleperformance. For example, under oath before another court, Equifax's representative employee testified: "Intelenet has no corporate affiliation with Equifax. Intelenet is not a corporate partner of Equifax. Rather, Intelenet is a company wholly separate from Equifax and is a party to a contract with Equifax wherein Equifax hired Intelenet to assist Equifax with various matters. Neither Mr. Negi nor Mr. Singh [the dispute processing agents] are employees of Equifax." *Miller v. Equifax Info. Serv.*, Case No. 4:19-cv-584, ECF 47-1 (M.D. Fla. Sept. 18, 2020). And in its briefing in that same case, Equifax argued, "Courts have determined that Intelenet is a separate legal entity, not controlled by a party."

**ANSWER:**

Equifax states that the briefing and case law referenced by this paragraph speak for themselves, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misuses, misquotes, or takes out of context the contents of the briefing and case law referenced by this paragraph.

325634171v.1

**COMPLAINT ¶54:**

Regardless of whether Equifax's statements are correct, Equifax believes that it cannot direct, control, manage or reliably influence Teleperformance's employees.

**ANSWER:**

Equifax states that it expects operators employed by vendors to conduct reinvestigations in accordance with Equifax's policies and procedures for reinvestigating consumer disputes, and, therefore denies the allegations in this paragraph to the extent the purport to assert otherwise.

**COMPLAINT ¶55:**

Equifax itself did not conduct any reinvestigation of Plaintiff's disputes. Instead, it merely caused the disputes to be removed from its control to be saved within a database by an overseas data-processing vendor.

**ANSWER:**

Equifax denies the allegations in this paragraph as they pertain to Equifax.

### *Plaintiff Suffered Actual Harm*

**COMPLAINT ¶56:**

The falsehoods reported by Equifax caused Plaintiff to suffer from, a denial of pre-approval for a mortgage.

**ANSWER:**

Equifax states that it does not generally keep copies of the consumer reports it issues to third parties. Equifax is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

**COMPLAINT ¶57:**

Plaintiff is now afraid to apply for credit because she knows that Equifax has not corrected the mix, and she does not want to have defamatory information published about her to additional lenders.

**ANSWER:**

Equifax is without knowledge or information as to the truth of Plaintiff's subjective beliefs.

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO
PLAINTIFF'S COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

325634171v.1

**COMPLAINT ¶58:**

As a result of inaccurate reporting, Plaintiff has suffered damages, including, but not limited to:

i.      Monies lost by attempting to fix the errors. Plaintiff has suffered actual damages in postage paid;

ii.     Loss of time attempting to cure the errors;

iii.    Mental anguish, added stress, aggravation, embarrassment, and other related impairments to the enjoyment of life; Plaintiff is being physically affected by Equifax's errors; and

iv.     Defamation as Equifax published inaccurate and false information to third party entities.

**ANSWER:**

Equifax states that it does not generally keep copies of the consumer reports it issues to third parties. Equifax is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

### *Defendant's Conduct Was Willful*

**COMPLAINT ¶56:***[sic]*

The FCRA allows for a remedy for a "willful" violation. A willful act or violation includes, "not only knowing violations of [the statute], but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, at 57 (2007). A "reckless" action includes conduct whereby "the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id*. at 69.

**ANSWER:**

Equifax states that the statutory provisions and case law referenced by this paragraph speak for themselves, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misquotes, or takes out of context the contents of the statutory provisions and case law referenced by this paragraph. Plaintiff's interpretation of the law also contains legal conclusions not subject to admission or denial.

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO
PLAINTIFF'S COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

325634171v.1

**COMPLAINT ¶57:**

Proof of willfulness includes, for example, "evidence that other consumers have lodged complaints similar to" the one made by the Plaintiff and a failure to make the correction right away. *Dalton*, 257 F.3d at 418; *Saunders v. Branch Banking & Trust Co. of Va*., 526 F.3d 142, 151 (4th Cir. 2008).

**ANSWER:**

Equifax states that the case law referenced by this paragraph speaks for itself, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misquotes, or takes out of context the contents of the case law referenced by this paragraph. Plaintiff's interpretation of the law also contains legal conclusions not subject to admission or denial.

**COMPLAINT ¶58:**

"Evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong evidence is required to cure the defendant's disrespect for the law." *Dalton v. CAI*, 257 F.3d 409, 418 (4th Cir. 2001) (noting that whether "other consumers have lodged complaints similar to Dalton's against CAI" is relevant to willfulness under the FCRA). Moreover, repeated noncompliance with statutory duties can establish that the defendants acted willfully. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 53 (2007) (punitive damages can be awarded based on "reckless disregard for a statutory duty").

**ANSWER:**

Equifax states that the case law referenced by this paragraph speaks for itself, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misquotes, or takes out of context the contents of the case law referenced by this paragraph. Plaintiff's interpretation of the law also contains legal conclusions not subject to admission or denial.

**COMPLAINT ¶59:**

As detailed above, the FCRA section at issue here, and informative guidance, have been around now for over 50 years. The language of § 1681e(b) has not changed. The CRA Defendants' dispute investigation obligations under § 1681i(a) have not changed. The FCRA's caution of Defendants' "grave responsibilities" to ensure accuracy has not changed.

25

**ANSWER:**

Equifax states that the statutory provisions referenced by this paragraph speak for themselves, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misquotes, or takes out of context the contents of the statutory provisions referenced by this paragraph. Plaintiff's interpretation of the law also contains legal conclusions not subject to admission or denial.

**COMPLAINT ¶60:**

Discovery will show that Equifax receives thousands of consumer disputes every year alerting Equifax that it is mixing up the information that it reports on consumers' files. This is more than sufficient to require a reasonable company to at least examine or investigate further before blindly reporting further.

**ANSWER:**

Upon information and belief, Equifax admits that it receives thousands of consumer disputes every year. Equifax states that examination of the contents of those thousands of disputes is not proportional to the needs of the case. Due to the non-specificity of the remaining allegations, Equifax is unable to formulate a response.

**COMPLAINT ¶61:**

Mixed files are not a new phenomenon. Equifax has been on notice of the existence of mixed files, and the fact that its procedures for creating credit files, including its matching algorithms, are prone to frequently cause mixed files, for over forty (40) years. *See Thompson v. San Antonia Retail Merchants Ass'n,* 682 F.2d 509, 511 (5th Cir. 1982).

**ANSWER:**

Equifax states that the case law referenced by this paragraph speaks for itself, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misquotes, or takes out of context the contents of the case law referenced by this paragraph. Plaintiff's interpretation of the law also contains legal conclusions not subject to admission or denial.

**COMPLAINT ¶62:**

Equifax has also been repeatedly criticized by Federal and State regulators, and consumer groups for the refusal or failure to conduct substantive reinvestigations.

26

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO
PLAINTIFF'S COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

325634171v.1

**ANSWER:**

Equifax states that the agency and civil society publications alluded to by this paragraph speak for themselves, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misuses, misquotes, or takes out of context the contents of the agency and civil society publications alluded to by this paragraph.

**COMPLAINT ¶63:**

In 2015, a large group of state Attorneys General forced a consent order from Equifax and the other two major credit reporting agencies by which they were required to develop procedures necessary to comply with the FCRA.[2] The AG Settlement required, amongst many changes and mandates, that Equifax comply with § 1681i(a).

**ANSWER:**

Equifax states that the consent order referenced by this paragraph speaks for itself, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misuses, misquotes, or takes out of context the contents of the consent order referenced by this paragraph.

**COMPLAINT ¶64:**

The AG Settlement also required the CRAs to conduct significant research and data gathering—even creating a "working group" to address these issues, and to develop special procedures to handle disputes as in this case. Notwithstanding these requirements, Equifax did not meaningfully comply with the AG Settlement in these regards.

**ANSWER:**

Equifax states that the consent order referenced by this paragraph speaks for itself, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misuses, misquotes, or takes out of context the contents of the consent order referenced by this paragraph.

**COMPLAINT ¶65:**

More recently, Equifax has been the subject of numerous state attorney general actions relating to its mixed file problem.

---

[2] *Available at* https://www.ohioattorneygeneral.gov/Files/Briefing-Room/News-Releases/Consumer-Protection/2015-05-20-CRAs-AVC.aspx.

325634171v.1

**ANSWER:**

Equifax states that the document alluded to by this paragraph speaks for itself, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misuses, misquotes, or takes out of context the contents of the document alluded to by this paragraph.

**COMPLAINT ¶66:**

For example, in 2015, the New York Attorney General filed charges and settled claims with Equifax over mixed files.[3]

**ANSWER:**

Equifax states that the document referenced by this paragraph speaks for itself, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misuses, misquotes, or takes out of context the contents of the document referenced by this paragraph.

**COMPLAINT ¶67:**

Notwithstanding Equifax's notice and being subject to repeated enforcement actions, mixed files continue to occur despite consumers' unique personal identifying information, such as Social Security numbers, date of birth, and addresses.

**ANSWER:**

Equifax admits that it is aware of the "mixed file" concept. Equifax denies that all of the personal identifying information listed in this paragraph is necessarily "unique."

**COMPLAINT ¶68:**

Another consequence of mixed files is the resulting disclosure of a consumer's most personal identifying and financial information absent the consumer's knowledge, consent, or both. This occurs when a consumer's file is mixed with that of another consumer, and either of those consumers applies for credit, housing, insurance, or employment, and Equifax sells information pertaining to one consumer in response to the application of the other.

---

[3] *See* Internet Archive, Settlement Agreement *In the Matter of Eric T. Schneiderman, Attorney General of the State of New York v. Experian Information Solutions, Inc.; Equifax Information Services, LLC; and Trans Union LLC., available at* https://web.archive.org/web/20150315033653/https://ag.ny.gov/press-release/ag-schneiderman-announces-groundbreaking-consumer-protection-settlement-three-national (last visited Mar. 27, 2026).

28

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO
PLAINTIFF'S COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

325634171v.1

**ANSWER:**

Equifax is without knowledge or information sufficient to form a belief as to the generalized and non-specific allegations in this paragraph.

**COMPLAINT ¶69:**

FCRA lawsuits have resulted in multi-million-dollar verdicts for consumers who fall victim to a mixed credit file.

**ANSWER:**

Equifax states that the verdicts alluded to by this paragraph speak for themselves, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misuses, misquotes, or takes out of context the contents of the verdicts referenced by this paragraph.

**COMPLAINT ¶70:**

Notably, the Federal Trade Commission has specifically warned consumer reporting agencies, including Equifax, to review their procedures when a mixed file occurs.

**ANSWER:**

Equifax states that the agency publication(s) alluded to by this paragraph speak for themselves, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misuses, misquotes, or takes out of context the contents of the agency publication(s) alluded to by this paragraph.

**COMPLAINT ¶71:**

The CFPB has maintained a Consumer Complaint database since 2011. It receives a small percentage of the total consumer credit reporting complaints made nationwide, as many multiples more are made directly to the Defendants, and/or to other government agencies, attorneys, or non-profit organizations.

**ANSWER:**

Equifax states that the publicly available data from the CFPB complaints database speaks for itself, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misuses, misquotes, or takes out of context the contents of the publicly available data from the CFPB complaints database referenced by this paragraph.

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO PLAINTIFF'S COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

325634171v.1

**COMPLAINT ¶72:**

Equifax regularly receives unredacted consumer dispute details from this database.

**ANSWER:**

Equifax admits that it has received complaints from the CFPB.

**COMPLAINT ¶73:**

Since the database began accepting complaints, the CFPB has sent millions of consumer credit reporting complaints to Equifax.

**ANSWER:**

Equifax states that the publicly available data from the CFPB complaints database speaks for itself, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misuses, misquotes, or takes out of context the contents of the publicly available data from the CFPB complaints database referenced by this paragraph.

**COMPLAINT ¶74:**

Further, over 290,000 of those CFPB complaints against Equifax were largely based on its failures to reasonably investigate consumer disputes.

**ANSWER:**

Equifax states that the publicly available data from the CFPB complaints database speaks for itself, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misuses, misquotes, or takes out of context the contents of the publicly available data from the CFPB complaints database referenced by this paragraph.

**COMPLAINT ¶75:**

Just in the last 12 months alone, Equifax has been sued by consumers alleging its violation of the FCRA over 3,000 times. Most of these alleged that the Defendant violated § 1681i(a) by failing to conduct a lawful reinvestigation of the consumer's accuracy dispute. Equifax has been sued over 2,000 times per year for nearly every year over the last decade.

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO PLAINTIFF'S COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

325634171v.1

**ANSWER:**

Equifax states that, as an entity operating nationwide in a regulated industry, it is named as a defendant in multiple jurisdictions. Equifax states that the publicly available data on litigation filings referenced by this paragraph speak for themselves, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misuses, misquotes, or takes out of context the contents of the publicly available data on litigation filings referenced by this paragraph.

**COMPLAINT ¶76:**

Despite federal and state law, Congressional mandate, federal and state enforcement actions, and thousands of consumer lawsuits, mixed credit files remain a significant problem for innocent consumers, including Plaintiff.

**ANSWER:**

Equifax is without knowledge or information sufficient to form a belief as to the generalized and non-specific allegations in this paragraph.

**COMPLAINT ¶77:**

Despite the notice and judicial, regulatory, and public interest criticism, Equifax has refused to change its dispute investigation processes because it believes it would cost too much money to do so.

**ANSWER:**

Equifax states that the allegation in this paragraph that it "has refused to change its dispute investigation processes" refers to a "change" without actually identifying it, and, therefore, as phrased, the precise nature of the allegation is insufficiently clear. Equifax denies the remaining allegations in this paragraph as they pertain to Equifax.

**COMPLAINT ¶78:**

Equifax's procedures (or lack thereof) imposed on Plaintiff an unjustifiable and unreasonable risk of harm that could have been mitigated or avoided with just modest imposition.

**ANSWER:**

Equifax states that the allegation in this paragraph that the alleged harm "could have been mitigated or avoided with just modest imposition" refers to a "modest imposition" without actually identifying it,

325634171v.1

and, therefore, as phrased, the precise nature of the allegation is insufficiently clear. Equifax denies the remaining allegations in this paragraph as they pertain to Equifax.

**CAUSES OF ACTION**

**COUNT I:**

**VIOLATIONS OF § 1681e(b) OF THE FCRA**

**COMPLAINT ¶79:**

Plaintiff re-alleges and incorporates all other factual allegations set forth in the Complaint.

**ANSWER:**

Equifax re-asserts and incorporates all responses to factual allegations set forth in the Answer.

**COMPLAINT ¶80:**

Equifax violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff when it reported the inaccurate and derogatory information belonging to another consumer.

**ANSWER:**

Denied.

**COMPLAINT ¶81:**

As a result of Equifax's violations of 15 U.S.C. §1681e(b) Plaintiff suffered actual damages, including but not limited to: harm to her credit score and credit opportunities; time spent disputing the inaccurate information; embarrassment; humiliation; harm to reputation; loss of privacy; mental anguish; stress; aggravation; and other related impairments to the enjoyment of life.

**ANSWER:**

Denied.

**COMPLAINT ¶82:**

Further, after Plaintiff's disputes put it on notice of likely inaccuracies and reasons to doubt the correctness of the information reporting in Plaintiff's file, Equifax ignored that information and did not

32

325634171v.1

use any human or substantive review to confirm and verify that its procedures were ensuring maximum possible accuracy of Plaintiff's credit reports.

**ANSWER:**

Denied.

**COMPLAINT ¶83:**

Equifax furnished multiple consumer reports to third parties containing inaccurate information, including the derogatory AMEX account, and it did so after receiving notice of these inaccuracies.

**ANSWER:**

Equifax states that it does not generally keep copies of the consumer reports it issues to third parties.

**COMPLAINT ¶84:**

The violations by Equifax were willful, rendering Equifax liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o. Plaintiff does not seek joint liability.

**ANSWER:**

Denied.

**COMPLAINT ¶85:**

Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Equifax in amounts to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**ANSWER:**

Denied.

**COMPLAINT ¶80:***[sic]*

Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**ANSWER:**

Denied.

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO PLAINTIFF'S COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

325634171v.1

## COUNT II:

## VIOLATIONS OF § 1681i OF THE FCRA

**COMPLAINT ¶82:***[sic]*

Plaintiff re-alleges and incorporates all other factual allegations set forth in the Complaint.

**ANSWER:**

Equifax re-asserts and incorporates all responses to factual allegations set forth in the Answer.

**COMPLAINT ¶83:**

Equifax violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the items from Plaintiff's credit file.

**ANSWER:**

Denied.

**COMPLAINT ¶84:**

Equifax violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff as to the inaccurate information.

**ANSWER:**

Denied.

**COMPLAINT ¶85:**

Equifax violated 15 U.S.C. § 168 li(a)(5)(A) by failing to promptly delete the disputed inaccurate information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

**ANSWER:**

Denied.

**COMPLAINT ¶86:**

Equifax violated 15 U.S.C. § 1681i(a)(6) by failing to provide Plaintiff with the results of a reinvestigation under this subsection not later than 5 business days after the completion of the reinvestigation, after it received Plaintiff's January 2025 and November 2025 disputes.

325634171v.1

**ANSWER:**

Denied.

**COMPLAINT ¶87:**

As a result of Equifax's violations of 15 U.S.C. § 1681i(a), Plaintiff suffered actual damages, including but not limited to: harm to her credit score and credit opportunities; time spent disputing the inaccurate information; embarrassment; humiliation; harm to reputation; loss of privacy; mental anguish; stress; aggravation; and other related impairments to the enjoyment of life.

**ANSWER:**

Denied.

**COMPLAINT ¶88:**

The violations by Equifax were willful, rendering Equifax liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o. Plaintiff does not seek joint liability.

**ANSWER:**

Denied.

**COMPLAINT ¶89:**

Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Equifax in amounts to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**ANSWER:**

Denied.

### JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO PLAINTIFF'S COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

325634171v.1

**ANSWER:**

Equifax admits that Plaintiff demands a jury trial on all triable issues. Equifax objects to a jury trial on any claims for equitable relief and all other issues as to which a jury is not permitted as of right or as a matter of law.

<strong><u>DEMAND FOR RELIEF</u></strong>

WHEREFORE, Plaintiff, ALEXIS DANIELLE CARO, respectfully requests that this Court award judgment for actual, statutory, compensatory, and punitive damages against Defendant, EQUIFAX INFORMATION SERVICES, LLC; attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and such other relief the Court deems just and proper.

**ANSWER:**

Equifax denies that Plaintiff is entitled to any relief sought from Equifax in the DEMAND FOR RELIEF, including all subparts.

<strong><u>AFFIRMATIVE AND OTHER DEFENSES</u></strong>

Equifax asserts the following affirmative and other defenses to the Complaint:

<strong><u>FIRST DEFENSE</u></strong>

At all relevant times herein, the Plaintiff's alleged damages, which Equifax denies exist, were aggravated by the failure of Plaintiff to use reasonable diligence to mitigate the same. Therefore, Plaintiff's recovery, if any, should be barred or decreased by reason of their failure to mitigate alleged losses.

**WHEREFORE**, having fully answered or otherwise responded to the allegations in Plaintiff's Complaint, Equifax prays that:

(1)     Plaintiff's Complaint be dismissed in its entirety and with prejudice as to Equifax, with all costs taxed against Plaintiff;

(2)     it be dismissed as a party to this action;

(3)     it recover such other and additional relief as the Court deems just and appropriate.

325634171v.1

DATED: June 30, 2026

Respectfully submitted,

SEYFARTH SHAW LLP


By: _/s/ Theodore E. Roethke_

Theodore E. Roethke
*Counsel for Defendant*
*Equifax Information Services LLC*

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO
PLAINTIFF'S COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

325634171v.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 30, 2026, I presented the foregoing DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO PLAINTIFF'S COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.


  */s/ Theodore E. Roethke*
Theodore E. Roethke
*Counsel for Defendant*
*Equifax Information Services LLC*

325634171v.1